GUOFENG LI, ESQ. (CA343936)
VIP LAW GROUP PC
Email: LAWYERLI.CHRIS@GMAIL.COM
855 CONKLIN STREET STE S
FARMINGDALE, NY 11735
Telephone No.: (516) 808-6266
Attorney for Plaintiff HUI TANG

# UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

**HUI TANG**,

*Petitioner-Plaintiff,*

*v.*

**MARKWAYNE MULLIN,** Secretary of the U.S. Department of Homeland Security, in his official capacity**;**

**TODD BLANCHE,** Attorney General of the United States, in his official capacity**;**

**DAVID VENTURELLA,** Acting Director, U.S. Immigration and Customs Enforcement, in his official capacity**;**

**THOMAS GILES,** Director, ICE Los Angeles Field Office, in his official capacity**; and**

**FERETI SEMAIA,** Warden, Adelanto ICE Processing Center, in his official capacity**,**.

*Respondents-Defendants.*

Case No. ________________________

**PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241; 8 U.S.C. §§ 1225, 1226; APA 5 U.S.C. § 706;**

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

## INTRODUCTION

1. Petitioner Hui Tang ("Petitioner") is a native and citizen of the People's Republic of China. She was inspected and lawfully admitted to the United States most recently on December 24, 2025, through a port of entry on a B-2 visa, with authorization to remain through June 23, 2026. Exhibit E. She first entered the United States in lawful B-2 status on September 2, 2021, Exhibit D, and in 2022, within one year of that arrival, she affirmatively applied for asylum and withholding of removal (Form I-589, Receipt No. ZLA2250486480). Exhibit F. That application remains pending.

2. On July 16, 2026, Petitioner appeared, as directed, at the Los Angeles Asylum Office in Tustin, California, for her affirmative asylum interview. Officers of U.S. Immigration and Customs Enforcement ("ICE") arrested her at that interview. She has been confined at the Adelanto ICE Processing Center ever since — 41 days as of the date of this Petition — and she has never received a bond hearing or any individualized determination of whether her detention serves any legitimate purpose. Exhibit H.

3. Because Petitioner was inspected and admitted, her detention is governed by 8 U.S.C. § 1226(a), the discretionary detention statute under which a noncitizen may be detained or released on bond or conditional parole. She is not an "applicant for admission" under 8 U.S.C. § 1225(a)(1), is not "seeking admission" under § 1225(b)(2)(A), and is not subject to any mandatory-detention provision. Respondents have nonetheless detained her as though she were subject to mandatory detention, without any custody review at all.

4. That detention violates the Immigration and Nationality Act and the Due Process Clause of the Fifth Amendment. Petitioner has complied with every step of the lawful immigration process; indeed, she was arrested precisely because she appeared for the interview the Government scheduled. Continued confinement without any custody determination serves no purpose the law recognizes.

5. Petitioner therefore respectfully requests that this Court issue a writ of habeas corpus ordering her immediate release under reasonable conditions of supervision or, in the alternative, ordering Respondents to provide a prompt individualized custody hearing before a neutral adjudicator at which the Government bears the burden of justifying any further detention. Petitioner also seeks declaratory and injunctive relief as appropriate.

**CUSTODY**

6. Petitioner is in the physical custody of Respondents at the Adelanto ICE Processing Center, 10400 Rancho Road, Adelanto, California 92301, within this District. Exhibit H. She is "in custody" within the meaning of 28 U.S.C. § 2241(c)(3).

**JURISDICTION**

7. This action arises under the Constitution of the United States and the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 *et seq.* This Court has jurisdiction under 28 U.S.C. § 2241 (*habeas corpus*), 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1651 (All Writs Act), and Article I, § 9, cl. 2 of the United States Constitution (Suspension Clause). The Court may grant declaratory relief under 28 U.S.C. §§ 2201–2202.

8. No jurisdiction-stripping provision applies. Petitioner does not challenge any removal order or the commencement or adjudication of her removal proceedings; 8 U.S.C. § 1252(b)(9) and (g) therefore pose no bar. *See Jennings v. Rodriguez*, 583 U.S. 281, 294–95 (2018). Nor does 8 U.S.C. § 1226(e) bar this action: that provision precludes review only of discretionary custody judgments, not challenges to the extent of the Government's statutory detention authority or to the constitutionality of the procedures by which detention is imposed. *Id.* at 295–96; *Demore v. Kim*, 538 U.S. 510, 516–17 (2003).

**VENUE AND INTRADISTRICT ASSIGNMENT**

9. Venue is proper in the Central District of California because Petitioner is detained at the Adelanto ICE Processing Center in this District, and in a habeas action challenging present physical custody the district of confinement is the proper forum and the immediate custodian — the warden of the facility — is the core respondent. *Rumsfeld v. Padilla*, 542 U.S. 426, 434–35, 442–47 (2004). Venue is independently proper under 28 U.S.C. § 1391(e) because this is an action against officers of the United States in their official capacities and a substantial part of the events giving rise to the claims — Petitioner's ongoing detention — is occurring in this District.

10. Because Petitioner is confined in San Bernardino County, this action is properly assigned to the Eastern Division of this District. *See* General Order No. 21-01; Civil Cover Sheet (Form CV-71), filed herewith.

**PARTIES**

11. Petitioner **HUI TANG** is a native and citizen of China detained at the direction of Respondents at the Adelanto ICE Processing Center, 10400 Rancho Road, Adelanto, CA 92301.

12. Respondent **MARKWAYNE MULLIN** is sued in his official capacity as Secretary of the U.S. Department of Homeland Security ("DHS"). He is responsible for the administration and enforcement of the immigration laws, 8 U.S.C. § 1103(a), routinely transacts business in this District, and is a legal custodian of Petitioner. His official address is U.S. Department of Homeland Security, Washington, DC 20528.

13. Respondent **TODD BLANCHE** is sued in his official capacity as Acting Attorney General of the United States. He is responsible for the administration of the immigration laws as exercised by the Executive Office for Immigration Review, 8 U.S.C. § 1103(g), routinely transacts business in this District, and is a legal custodian of Petitioner. His official address is U.S. Department of Justice, 950 Pennsylvania Avenue, N.W., Washington, DC 20530.

14. Respondent **DAVID VENTURELLA** is sued in his official capacity as Acting Director of ICE. In that capacity he is responsible for the administration and enforcement of the immigration laws as exercised by ICE, including the detention and custody of noncitizens, routinely transacts business in this District, and is a legal custodian of Petitioner. His official address is 500 12th Street, S.W., Washington, DC 20536.

15. Respondent **THOMAS GILES** is sued in his official capacity as Director of the ICE Enforcement and Removal Operations Los Angeles Field Office, which has jurisdiction over the Adelanto ICE Processing Center. In that capacity he has direct authority over Petitioner's detention and release and is a legal custodian of Petitioner. His official address is 300 North Los Angeles Street, Room 7631, Los Angeles, CA 90012.

16. Respondent **FERETI SEMAIA** is sued in his official capacity as Warden of the Adelanto ICE Processing Center, the facility where Petitioner is held. He is Petitioner's immediate custodian. His official address is 10400 Rancho Road, Adelanto, CA 92301.

17. Each Respondent is sued in an official capacity only. Pursuant to Fed. R. Civ. P. 25(d), any successor to a named Respondent is automatically substituted as a party.

## STATEMENT OF FACTS

### A. Petitioner's Lawful Admissions, Pending Asylum Application, and Ties to the United States

18. Petitioner first entered the United States on September 2, 2021, when she was inspected and admitted at a port of entry in B-2 status. Exhibit D (I-94 No. 656938619A2).

19. In 2022, within one year of her arrival, Petitioner affirmatively filed Form I-589, Application for Asylum and for Withholding of Removal, which U.S. Citizenship and Immigration Services ("USCIS") received under Receipt No. ZLA2250486480. On May 13, 2022, USCIS

issued a biometrics appointment notice on that application, and Petitioner appeared and completed biometrics on June 8, 2022. Exhibit F. Her asylum application has remained pending at all times since.

20. Based on her pending asylum application, USCIS granted Petitioner employment authorization in category C08, issuing an Employment Authorization Document on October 5, 2022. Exhibit A.

21. On September 25, 2024, Petitioner married Johnson Tang (also known as Can Mieu Tang) in Clark County, Nevada. Exhibit C. Mr. Tang is a lawful permanent resident of the United States and has resided here since 1987. Exhibit L; Exhibit K ¶ 1. The couple reside together at 2802 SE 82nd Avenue, Apt. 3, Portland, Oregon 97266. Exhibits C, I, K.

22. In or about September 2025, Petitioner traveled to China to care for her father, who had become seriously ill and was hospitalized from November 19, 2025 through December 6, 2025. On December 24, 2025, she returned to the United States, where she was again inspected and admitted at a port of entry in B-2 status, with authorization to remain through June 23, 2026. Exhibit E (I-94 No. 869711361A4).

23. Petitioner's life in this country is stable, documented, and law-abiding. She holds an Oregon driver license issued January 30, 2025 and renewed January 14, 2026. Exhibit B. She and her husband timely filed a joint federal income tax return for tax year 2025 on April 10, 2026. Exhibit I. She is a certified hypnotist, credentialed by the National Guild of Hypnotists on August 26, 2024. Exhibit J. She has no criminal record in the United States or in any other country. Exhibit K ¶ 3.

**B. Petitioner's Arrest at Her Asylum Interview and Continuing Detention**

24. On July 16, 2026, Petitioner appeared at the Los Angeles Asylum Office in Tustin, California, for the affirmative asylum interview the Government had scheduled on her pending I-589. ICE officers arrested her at the asylum office while she was there to attend that interview. Exhibit K ¶¶ 4–5.

25. Petitioner has been in ICE custody continuously since her arrest. She is detained at the Adelanto ICE Processing Center in Adelanto, California. Exhibit H (Online Detainee Locator record, Aug. 25, 2026).

26. The Department of Homeland Security has placed Petitioner in removal proceedings before the Adelanto Immigration Court. Her case is pending, with a docket date of July 20, 2026, and her next hearing is an internet-based Master Calendar Hearing scheduled for September 22, 2026, before Immigration Judge Steven Marcus. Exhibit G.

27. At no time since her arrest has Petitioner received a bond hearing or any individualized custody review by any adjudicator. On information and belief, Respondents' position is that Petitioner is subject to mandatory detention and ineligible for a bond hearing, and Immigration Judges consider themselves bound by agency precedent adopting that position.

28. Petitioner's detention has separated her from her husband and her community. Mr. Tang, who suffers from painful knee problems requiring surgery and relies on his wife's support, has experienced severe insomnia and daily distress since her arrest and can speak with her only by telephone. Exhibit K ¶¶ 5, 7. He has committed under penalty of perjury to house Petitioner in the couple's Portland home, to assume full responsibility for her financial and logistical needs, to guarantee her appearance at every immigration court hearing and ICE check-in, and to support her compliance with any alternatives-to-detention conditions, including an ankle monitor, ISAP reporting, or a reasonable bond. Exhibit K ¶¶ 4, 6.

## LEGAL FRAMEWORK

### A. The INA's Two Pre-Removal-Order Detention Regimes

29. The INA establishes two distinct regimes governing detention before entry of a removal order. Section 1225(b) governs "applicants for admission" — noncitizens "present in the United States who ha[ve] not been admitted" or who "arriv[e] in the United States." 8 U.S.C. § 1225(a)(1). Within that group, § 1225(b)(2)(A) provides for detention of an applicant "seeking admission" whom an examining officer determines "is not clearly and beyond a doubt entitled to be admitted." Section 1226, by contrast, governs noncitizens who are already in the United States and are charged as removable: under § 1226(a), the Secretary "may" arrest and detain such a noncitizen "pending a decision on whether the alien is to be removed from the United States," and "may" release the noncitizen on bond or conditional parole. 8 U.S.C. § 1226(a)(1)–(2); *Jennings v. Rodriguez*, 583 U.S. 281, 288–90 (2018).

30. A noncitizen detained under § 1226(a) may seek a custody redetermination from an Immigration Judge at any time before a removal order becomes administratively final. 8 C.F.R. §§ 236.1(d)(1), 1003.19(a), 1236.1(d)(1). At such a hearing the Immigration Judge considers whether the noncitizen presents a danger to persons or property or a risk of flight. *Matter of Guerra*, 24 I&N Dec. 37, 40 (BIA 2006). Only noncitizens described in § 1226(c) — those subject to the enumerated criminal and terrorism-related grounds — are excluded from that process.

### B. An Admitted Noncitizen Is Detained, If at All, Under § 1226(a)

31. "Admission" means "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A). A noncitizen who was admitted and thereafter remained beyond the authorized period of stay is charged as deportable under 8 U.S.C. § 1227(a)(1)(B), not as inadmissible under 8 U.S.C. § 1182. Such a

noncitizen is not an "applicant for admission" under § 1225(a)(1), because admission has already occurred, and is not "seeking admission" under § 1225(b)(2)(A), because admission has already been granted. By the statute's plain terms, § 1225(b) does not reach a noncitizen who was inspected and admitted; § 1226(a) does.

32. The agency's recent mandatory-detention position does not reach Petitioner. *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025), and the ICE guidance it endorsed address noncitizens who entered without inspection and are therefore "present in the United States without admission." By its own terms, that reasoning does not extend to a noncitizen who was inspected and admitted at a port of entry and who is charged as deportable under § 1227. Nothing in that decision purports to withdraw an admitted noncitizen from the custody-redetermination process that § 1226(a) and its implementing regulations provide.

33. That is the very line the courts of appeals have drawn — on both sides of the division over § 1225(b)(2)(A). The Fifth Circuit sustained mandatory detention only as to noncitizens present without admission, and did so on the express ground that § 1226(a) still governs those who were admitted: "Section 1226(a) undeniably does work independent from § 1225(b)(2)(A) because only § 1226(a) applies to admitted aliens who overstay their visas, become deportable on many different grounds, or were admitted erroneously due to fraud or some other error." *Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 499 (5th Cir. 2026); *accord Avila v. Bondi*, 170 F.4th 1128 (8th Cir. 2026). The circuits rejecting that reading confine § 1225(b)(2)(A) to noncitizens seeking entry at the border and hold that § 1226(a) governs those apprehended in the interior. *Rodriguez Vazquez v. Bostock*, No. 25-6842 (9th Cir. July 30, 2026); *Barbosa da Cunha v. Freden*, 175 F.4th 61, 71 (2d Cir. 2026); *Lopez-Campos v. Raycraft*, 175 F.4th 713, 732 (6th Cir. 2026); *Santillan Quiroz v. Mullin*, No. 26-6019, 2026 WL 1876709, at *5 (10th Cir. June 30,

2026); *Hernandez Alvarez v. Warden*, 175 F.4th 1258, 1262 (11th Cir. 2026). Under neither view does § 1225(b)(2)(A) extend to a noncitizen who was inspected and admitted at a port of entry.

34. Whatever deference an agency construction of § 1225(b)(2)(A) might once have commanded, none is owed now: reviewing courts must "exercise their independent judgment in deciding whether an agency has acted within its statutory authority." *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 412 (2024). On the statutory text, Petitioner's detention is authorized, if at all, only by § 1226(a), together with the custody-review process that section and its regulations provide.

**C. The Due Process Clause Independently Requires an Individualized Custody Determination**

35. "Freedom from imprisonment — from government custody, detention, or other forms of physical restraint — lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). The Clause protects "all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent," *id.* at 693, and its protections are at their strongest for a noncitizen who, like Petitioner, was lawfully admitted and has developed substantial ties to this country. *Landon v. Plasencia*, 459 U.S. 21, 32–34 (1982); *Mathews v. Diaz*, 426 U.S. 67, 77–80 (1976).

36. Civil detention is constitutionally permissible only where it bears a reasonable relation to a legitimate, non-punitive governmental purpose — in the immigration context, preventing flight and protecting the community — and only where it is accompanied by adequate procedural protections. *Zadvydas*, 533 U.S. at 690–91; *Foucha v. Louisiana*, 504 U.S. 71, 80–81 (1992); *Demore v. Kim*, 538 U.S. 510, 527–28 (2003). The minimum such protection is an individualized determination, by a neutral decisionmaker, of whether those purposes are actually

served by detaining the particular person. *Foucha*, 504 U.S. at 81–83; *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

37. The federal habeas statute contains no exhaustion requirement. Exhaustion in an immigration habeas case is prudential, not jurisdictional, and is excused where available remedies are inadequate or ineffective, where pursuing them would be futile, or where irreparable injury would result from delay. *Laing v. Ashcroft*, 370 F.3d 994, 1000–01 (9th Cir. 2004); *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007).

38. Each ground applies here. Respondents' position is that Petitioner is ineligible for any bond hearing, and Immigration Judges are bound by agency precedent on the scope of their own custody jurisdiction. Neither the Immigration Court nor the Board of Immigration Appeals may declare the agency's detention policy unlawful, adjudicate Petitioner's constitutional claims, or order release on constitutional grounds. The relief Petitioner seeks is therefore unavailable through the administrative process no matter how far it is pursued, and every additional day of administrative process is another day of confinement that only this Court can end.

39. Accordingly, to the extent Petitioner has not sought a custody redetermination from the Immigration Court, exhaustion should be excused as futile; to the extent she has sought one and been refused, no further administrative remedy exists. Either way, this Court may reach the merits.

## CLAIMS FOR RELIEF

### COUNT ONE

### Detention in Violation of the Immigration and Nationality Act

**(8 U.S.C. § 1226(a); 28 U.S.C. § 2241)**

40. Petitioner realleges and incorporates by reference each preceding paragraph.

41. Petitioner was inspected and admitted to the United States. She is not an "applicant for admission" under 8 U.S.C. § 1225(a)(1), is not "seeking admission" under § 1225(b)(2)(A), is not an arriving alien, and is not described in § 1226(c). Her detention pending a decision on removability is therefore governed exclusively by § 1226(a).

42. Section 1226(a) and its implementing regulations entitle Petitioner to an individualized custody determination and to request a custody redetermination before an Immigration Judge at any time before a removal order becomes administratively final. 8 C.F.R. §§ 236.1(d)(1), 1003.19(a), 1236.1(d)(1).

43. Respondents have detained Petitioner as though she were subject to mandatory detention, have denied her the custody-review process that § 1226(a) provides, and have thereby detained her without statutory authority. Petitioner is in custody "in violation of the . . . laws . . . of the United States." 28 U.S.C. § 2241(c)(3).

**COUNT TWO**

**Procedural Due Process — Detention Without an Individualized Custody Hearing**

**(U.S. Const. amend. V; 28 U.S.C. § 2241)**

44. Petitioner realleges and incorporates by reference each preceding paragraph.

45. Petitioner has a fundamental liberty interest in freedom from physical confinement, and that interest is at its strongest for a noncitizen who was lawfully admitted. *Zadvydas*, 533 U.S. at 690; *Landon*, 459 U.S. at 32–34. Under *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976), the process due turns on the private interest affected, the risk of erroneous deprivation under the

procedures used, and the Government's interest. Each factor points the same way here: Petitioner's liberty interest is at its maximum; the risk of erroneous deprivation under a regime affording no hearing at all is absolute, because no neutral adjudicator has examined whether her detention serves any purpose; and the Government's interest in detaining — without any hearing — a lawfully admitted asylum applicant with no criminal history, a lawful-permanent-resident spouse, and a hearing already scheduled for September 22, 2026, is minimal. Due process requires, at a minimum, a prompt hearing before a neutral adjudicator at which the need for Petitioner's detention is actually examined.

46. Due process further requires that, at that hearing, the Government bear the burden of justifying continued civil detention by clear and convincing evidence, and that the adjudicator consider alternatives to detention and Petitioner's ability to pay any bond. *Addington v. Texas*, 441 U.S. 418, 425–27 (1979); *Foucha*, 504 U.S. at 81–83; *Singh v. Holder*, 638 F.3d 1196, 1203–05 (9th Cir. 2011); *Hernandez v. Sessions*, 872 F.3d 976, 990–94 (9th Cir. 2017). Placing that burden on the detained noncitizen inverts the presumption that attaches to any deprivation of physical liberty.

47. Petitioner acknowledges *Rodriguez Diaz v. Garland*, 53 F.4th 1189 (9th Cir. 2022), which held that due process did not require a clear-and-convincing burden at a *further* bond hearing for a petitioner with a criminal history who had already received a hearing at which he bore the burden. *Id.* at 1207–08. That decision rested on the procedures its petitioner had actually received and expressly declined to foreclose as-applied challenges. Petitioner's circumstances are the opposite: she was lawfully admitted, has no criminal history, and has had no custody hearing of any kind. As applied to her, the *Mathews* factors require that the Government bear the burden.

48. Respondents' detention of Petitioner without any individualized custody hearing, and without the procedural safeguards the Constitution requires at such a hearing, violates the Due Process Clause of the Fifth Amendment.

**COUNT THREE**

**Substantive Due Process — Detention Not Reasonably Related to Any Legitimate Purpose**

**(U.S. Const. amend. V; 28 U.S.C. § 2241)**

49. Petitioner realleges and incorporates by reference each preceding paragraph.

50. Civil immigration detention is permissible only insofar as it serves the Government's legitimate interests in securing the noncitizen's appearance and protecting the public. *Zadvydas*, 533 U.S. at 690–91; *Demore*, 538 U.S. at 527–28. Detention not reasonably related to those purposes, or excessive in relation to them, is punitive and violates substantive due process. *Bell v. Wolfish*, 441 U.S. 520, 538–39 (1979); *Jones v. Blanas*, 393 F.3d 918, 932–34 (9th Cir. 2004).

51. Petitioner's continued confinement bears no reasonable relation to either purpose. She poses no danger: she has no criminal record anywhere. She poses no flight risk that conditions of release could not address: she affirmatively sought asylum, appeared for every appointment the Government scheduled — including the very interview at which she was arrested — has a lawful-permanent-resident husband and an established home in Portland, and has the strongest possible incentive to appear, because appearing is the only way to win the protection she seeks. Her husband has sworn to sponsor her, supervise her appearance at all hearings and check-ins, and support compliance with any alternatives-to-detention conditions. Exhibit K. Detention untethered from

the interests it is supposed to serve is punitive in effect, and Respondents may not impose it without an adjudication that it is necessary.

## PRAYER FOR RELIEF

WHEREFORE, Petitioner respectfully requests that this Court:

a. Assume jurisdiction over this matter;

b. Pursuant to 28 U.S.C. § 2243, issue an Order to Show Cause directing Respondents to file a return within three (3) days of service, and set this matter for hearing at the earliest practicable date;

c. Declare that Petitioner is detained, if at all, under 8 U.S.C. § 1226(a) and is not subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A) or any other provision;

d. Declare that Petitioner's continued detention without an individualized custody determination is unlawful and violates the INA and the Fifth Amendment;

e. Issue a writ of habeas corpus ordering Respondents immediately to release Petitioner from custody under reasonable conditions of supervision;

f. In the alternative, order Respondents to provide Petitioner, within seven (7) days, an individualized custody hearing before an Immigration Judge at which the Government bears the burden of proving by clear and convincing evidence that Petitioner is a danger to the community or a flight risk that no condition of release can mitigate, and at which the Immigration Judge considers alternatives to detention and Petitioner's ability to pay any bond — and order Petitioner released if no such hearing is timely provided;

g. Enjoin Respondents from transferring Petitioner outside the jurisdiction of this Court while this Petition is pending;

h. Award Petitioner reasonable attorney's fees and costs under the Equal Access to Justice Act, 28 U.S.C. § 2412, and any other applicable authority; and

i. Grant such further relief as the Court deems just and proper.

Dated: August 26, 2026

Respectfully submitted,

/s/ Guofeng Li
GUOFENG LI, ESQ. (CA SBN 343936)
VIP LAW GROUP PC
Attorney for Petitioner ZI HE

**VERIFICATION PURSUANT TO 28 U.S.C. § 2242**

I am the attorney for Petitioner Hui Tang and submit this verification on her behalf pursuant to 28 U.S.C. § 2242 because she is detained at the Adelanto ICE Processing Center and cannot readily sign this petition. I have discussed the facts stated in this Petition with Petitioner and with her husband, Yun Kang, and have reviewed the documents attached as exhibits. I verify under penalty of perjury under the laws of the United States that the factual statements in this Petition are true and correct to the best of my knowledge, information, and belief.

Executed on August 26, 2026, at Farmingdale, New York.

/s/ Guofeng Li
GUOFENG LI, ESQ.

**CERTIFICATION OF COMPLIANCE WITH FED. R. CIV. P. 5.2**

Counsel certifies that this Petition and the accompanying exhibits have been redacted in accordance with Fed. R. Civ. P. 5.2(a) and Local Rule 5.2-1. The minor child is identified by initials only; dates of birth are identified by year only; and Social Security numbers and financial account numbers have been omitted. Unredacted copies are maintained by counsel and will be lodged under seal upon request of the Court.

## INDEX OF EXHIBITS

Exhibit A — Employment Authorization Card for Hui Tang, issued by U.S. Citizenship and Immigration Services, dated October 5, 2022

Exhibit B — Oregon Driver License for Hui Tang, issued by the Oregon Department of Transportation, dated January 14, 2026

Exhibit C — Marriage Certificate for Johnson Tang and Hui Tang, issued by Clark County, Nevada, dated September 25, 2024

Exhibit D — I-94 Record for Hui Tang, issued by U.S. Customs and Border Protection, dated September 2, 2021

Exhibit E — Most Recent I-94 Record for Hui Tang, issued by U.S. Customs and Border Protection, dated December 24, 2025

Exhibit F — Form I-797C, Notice of Action, ASC Appointment Notice for Hui Tang, issued by the U.S. Department of Homeland Security, dated May 13, 2022

Exhibit G — EOIR Automated Case Information Printout for Tang, Hui, dated August 25, 2026

Exhibit H — ICE Online Detainee Locator System Record for Hui Tang, dated August 25, 2026

Exhibit I — U.S. Individual Income Tax Return (Form 1040, Tax Year 2025) for Johnson Tang and Hui Tang, dated April 10, 2026

Exhibit J — National Guild of Hypnotists Certificate for Hui Tang, dated August 26, 2024

Exhibit K — Declaration of Johnson Tang in Support of Habeas Corpus Petition for Hui Tang, dated August 25, 2026

Exhibit L — Permanent Resident Card for Can Mieu Tang (Johnson Tang), issued by U.S. Citizenship and Immigration Services, valid until August 6, 2035