UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HUI TANG,<br>Petitioner,<br>v.<br>MARKWAYNE MULLIN, et al.,<br>Respondents. | Case No. 5:26-cv-04881-KES<br><br>ORDER GRANTING THE PETITION AND ORDERING PETITIONER'S RELEASE FROM CUSTODY |

## I. INTRODUCTION

Hui Tang ("Petitioner") filed a petition for writ of habeas corpus under 28 U.S.C. § 2241 ("Petition" at Dkt. 1), challenging Petitioner's detention by the Department of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE"). The parties have consented to the jurisdiction of the Magistrate Judge. (Dkt. 8.) The Petition is granted, and Respondents are directed to immediately release Petitioner from custody.

//

//

//

## II. PROCEDURAL HISTORY

Petitioner filed the present Petition on August 26, 2026. (Dkt. 1.) The Petition raises the following claims:

Ground 1: Petitioner's detention violates the Immigration and Nationality Act ("INA") because Respondents have held her without a bond hearing under 8 U.S.C. § 1225, even though she is entitled to a bond hearing under 8 U.S.C. § 1226(a). (Pet. at 11-12 ¶¶ 40-43.)

Ground 2: Petitioner's detention violates her due process rights because due process requires (a) "at a minimum, a prompt hearing before a neutral adjudicator at which the need for Petitioner's detention is actually examined," and (b) "that, at that hearing, the Government bear the burden of justifying continued civil detention by clear and convincing evidence, and that the adjudicator consider alternatives to detention and Petitioner's ability to pay any bond." (Id. at 12-14, ¶¶ 44-48.)

Ground 3: Petitioner's detention violates substantive due process because it is "not reasonably related to any legitimate purpose" because she is not a danger to the community or a flight risk. (Id. at 14-15, ¶¶ 49-51.)

The Petition seeks (a) immediate release from custody under reasonable conditions of supervision or, alternatively, (b) an order directing Respondents to provide her with a bond hearing within seven days "at which the Government bears the burden of proving by clear and convincing evidence that Petitioner is a danger to the community or a flight risk that no condition of release can mitigate, and at which the Immigration Judge considers alternatives to detention and Petitioner's ability to pay any bond — and order Petitioner released if no such hearing is timely provided." (Id. at 15.) Petitioner also seeks a declaration "that Petitioner is detained, if at all, under 8 U.S.C. § 1226(a) and is not subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A)…." (Id.)

Respondents answered the Petition on September 2, 2026. ("Answer" at

Dkt. 7.) They admit, "The Petitioner appears to be entitled to request and receive an initial bond hearing pursuant to" Rodriguez Vazquez v. Bostock, 183 F.4th 1160, 1165 (9th Cir. 2026). (Answer at 2.) However, they argue she has not properly exhausted her administrative remedies for requesting such a hearing. (Id. at 3.) They argue she is not entitled to release from custody because she "is a visa overstay whose immigration proceedings remain pending," "was not previously released from ICE custody on an order of supervision," and "has no due process right to a pre-detention hearing…." (Id. at 2.)

Petitioner's Reply was due by September 8, 2026 (Dkt. 4), and none was filed.

**III. FACTUAL RECORD**

**A. Entry into the U.S. and Asylum Application (2021-2022).**

Petitioner is a native and citizen of the People's Republic of China. (Pet. at 2, ¶ 1; id. at 4, ¶ 11.) Petitioner first entered the United States on September 2, 2021, when she was inspected and admitted at a port of entry pursuant to a B-2 visa. (Pet. at 5, ¶ 18; Pet. Ex. D, E / Dkt. 1-2 at 8-11 (I-94 records for Petitioner issued by U.S. Customs and Border Protection).) In 2022, within one year of her arrival, she applied for asylum. (Pet. at 5, ¶ 19.) On June 8, 2022, Petitioner appeared as directed at a U.S. Citizen and Immigration Services ("USCIS") office and completed biometrics. (Pet. at 5-6, ¶ 19; Pet. Ex. F / Dkt. 1-2 at 12-13 (appointment notice).) Her asylum application remains pending. (Pet. at 2, ¶ 1; id. at 6, ¶ 19; Answer Ex. A / Dkt. 7-1 at 3 (Form I-213, stating, "On February 22, 2022, [Petitioner] filed with USCIS form I-589, application for Asylum and Withholding of Removal, [and] the application is pending.").)

**B. Life in the U.S. (2022-2026).**

Based on her pending asylum application, USCIS granted her employment authorization in category C08, issuing an Employment Authorization Document on October 5, 2022. (Pet. at 6, ¶ 20; Pet. Ex. A / Dkt. 1-2 at 2-3 (employment

authorization document).) She works as a certified hypnotist. (Pet. at 6, ¶ 23; Pet. Ex. J / Dkt. 1-2 at 21-22 (certification from the National Guild of Hypnotists).)

On September 25, 2024, Petitioner married a lawful permanent resident of the U.S. who has resided here since 1987. (Pet. at 6, ¶ 21; Pet. Ex. C / Dkt. 1-2 at 6-7 (marriage certificate); Pet. Ex. K / Dkt. 1-2 at 24, ¶ 2 (declaration from Petitioner's husband); Pet. Ex. L / Dkt. 1-2 at 27-28 (her husband's permanent resident card).) Before Petitioner's current detention by ICE, the couple resided together in Portland, Oregon. (Pet. at 6, ¶ 21; Pet. Ex. K / Dkt. 1-2 at 24-25, ¶¶ 3-4 (declaration from Petitioner's husband).)

Petitioner holds an Oregon driver's license valid through 2030. (Pet. at 6, ¶ 23; Pet. Ex. B / Dkt. 1-2 at 4-5 (driver's license).) She and her husband filed a joint federal income tax return for tax year 2025 on April 10, 2026. (Pet. at 6, ¶ 23; Pet. Ex. I / Dkt. 1-2 at 18-20 (tax return).)

In or about September 2025, Petitioner traveled to China to care for her father, who had become seriously ill and was hospitalized from November 19, 2025 through December 6, 2025. (Pet. at 6, ¶ 22.) On December 24, 2025, she returned to the U.S., where she was again inspected and admitted at a port of entry in B-2 status, with authorization to remain through June 23, 2026. (Pet. at 6, ¶ 22.)

Petitioner's husband declares that she has no criminal record in the U.S. or in any other country. (Pet. Ex. K / Dkt. 1-2 at 24-25, ¶ 3.)

**C. <u>Petitioner's Detention by ICE (July 2026 to Present).</u>**

On July 16, 2026, Petitioner appeared at an immigration office in Tustin, California for an affirmative asylum interview and was instead arrested by ICE. (Pet. at 2, ¶ 2; <u>id.</u> at 7, ¶ 24; Answer Ex. C / Dkt. 7-3 (administrative arrest warrant).) A Form I-213 ICE record attached to Respondents' Answer states that Petitioner's arrest was the result of "a targeted operation … initiated following a referral from the Fraud Detection and National Security Directorate (FDNS) due to public safety concerns … due to her criminal history and lack of lawful

immigration status…." (Answer Ex. A / Dkt. 7-1 at 2 (Form I-213).) However, the form does not actually list any criminal history. In the section entitled "CRIMINAL HISTORY," the form states, "None." (Id. at 3.) In another section entitled, "SECURITY THREAT GROUP DESIGNATION," the form states, "Records checks do not indicate any derogatory information." (Id. at 3.)

Petitioner was not given a bond hearing before an immigration judge ("IJ") either before or after her arrest by ICE. (Pet. at 2, ¶ 2; id. at 7, ¶ 27.) She requested and was scheduled for a bond hearing on September 1, 2026, but withdrew the request after "counsel of record did not appear…." (Answer Ex. B / Dkt. 7-2 (IJ's order).)

She was placed in removal proceedings, which remain pending. See Executive Office for Immigration Review ("EOIR"), Automated Case Information, https://acis.eoir.justice.gov/en/ (A# 240-658-922 (China), last accessed Sept. 9, 2026). She remains in ICE custody in Adelanto, California. See ICE Detainee Locator, https://locator.ice.gov/odls/ (A# 240-658-922 (China), last accessed Sept. 9, 2026).

Petitioner's detention has caused her husband significant hardship, because he "suffers from painful knee problems requiring surgery and relies on his wife's support." (Pet. at 7, ¶ 28; Pet. Ex. K / Dkt. 1-2 at 25, ¶ 5 (declaration from Petitioner's husband).)

## IV. DISCUSSION

### A. Petitioner is Entitled to Relief on Ground 1, Her Bond Hearing Claim.

In Ground 1, Petitioner argues that her detention violates the INA because Respondents have held her without a bond hearing under 8 U.S.C. § 1225, even though she is entitled to a bond hearing under 8 U.S.C. § 1226(a). (Pet. at 11-12 ¶¶ 40-43.) Respondents admit that Petitioner is entitled to request and receive a bond hearing under § 1226(a). (Answer at 2.) Accordingly, Petitioner is entitled

to relief on this claim.

While normally relief on this type of claim is a bond hearing, for the reasons set forth below, Petitioner is entitled to release from custody. Ground 1 is not moot, however, because there is still relief the Court can grant: a declaration that Petitioner is not subject to detention under 8 U.S.C. § 1225(b)(2)(A).

### B. Petitioner is Entitled to Relief on Ground 2, Her Procedural Due Process Claim.

#### 1. Parties' Arguments.

In Ground 2, Petitioner argues that her detention violates her due process rights because due process requires (a) "at a minimum, a prompt hearing before a neutral adjudicator at which the need for Petitioner's detention is actually examined," and (b) "that, at that hearing, the Government bear the burden of justifying continued civil detention by clear and convincing evidence, and that the adjudicator consider alternatives to detention and Petitioner's ability to pay any bond." (Id. at 12-14, ¶¶ 44-48 (discussing the factors set forth in Mathews v. Eldridge, 424 U.S. 319 (1976)).) The primary relief sought in the Petition is release from custody. (Id. at 15.)

Respondents argue she is not entitled to release from custody because she "is a visa overstay whose immigration proceedings remain pending," "was not previously released from ICE custody on an order of supervision," and "has no due process right to a pre-detention hearing…." (Answer at 2.)

#### 2. Legal Standard.

The Due Process Clause of the Fifth Amendment prohibits the federal government from depriving any person of "life, liberty, or property, without due process of law[.]" U.S. Const. Amend. V. The right to due process extends to "all 'persons' within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas v. Davis, 533 U.S. 678, 693 (2001).

"The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" Mathews v. Eldridge, 424 U.S. 319, 333 (1976) (quoting Armstrong v. Manzo, 380 U.S. 545, 552 (1965)). "[T]he Due Process Clause of the Constitution may require greater procedural protections than a statutory or regulatory scheme provides when freedom from imprisonment is at stake." Perez Bueno v. Janecka, No. 25-cv-03376-CAS-BFM, 2026 WL 309934, at *3, 2026 U.S. Dist. LEXIS 24644, at *7 (C.D. Cal. Feb. 5, 2026). To determine what procedural protections an individual is owed in the event of a government deprivation of a protected liberty interest, courts balance three factors: (a) the private interest that will be affected by the official action; (b) the risk of an erroneous deprivation of such interest and the value of additional procedural safeguards; and (c) the countervailing government interest. Mathews, 424 U.S. at 335.

**3. Analysis.**

a. Liberty interest and private interest affected.

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." Zadvydas v. Davis, 533 U.S. 678, 690 (2001). "Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty." Pinchi v. Noem, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025).

Respondents' Answer appears to argue that Petitioner does not have a legally cognizable liberty interest in release from custody because this is the Petitioner's first detention by ICE. (Answer at 2.) This appears to be an attempt to distinguish cases finding that, once a noncitizen is released on parole, this creates a liberty interest in release. See, e.g., Pinchi, 792 F. Supp. 3d at 1032-33; Ramos-Maldonado v. Semaia, No. 26-cv-01202-SSS-AS, 2026 WL 790788, at *2, 2026 U.S. Dist. LEXIS 57088, at *6-7 (C.D. Cal. Mar. 18, 2026); Omer G. G. v. Kaiser,

815 F. Supp. 3d 1098 (E.D. Cal. Nov. 22, 2025).

This is not the only situation in which courts have found that noncitizens have a protected liberty interest in release from custody, however. District courts generally reason that "the government's *knowing* decision not to detain an individual creates a liberty interest in their continued release." Anderson v. Chernut, No. 26-cv-01960-DAD-CKD, 2026 WL 809990, at *2, 2026 U.S. Dist. LEXIS 62410, at *4 (E.D. Cal. Mar. 24, 2026) (emphasis added). Many courts have held this includes noncitizens who have overstayed their visa. See, e.g., Tello Vazquez v. Mullin, No. 26-cv-2039-KKE, 2026 WL 1911507, at *2, 2026 U.S. Dist. LEXIS 147354 (W.D. Wash. July 2, 2026) ("The Government could have detained Petitioner at any time after the expiration of his visa in 2021 but did not do so until years later, after Petitioner developed significant ties to the United States. Petitioner's interest in maintaining his liberty is therefore strong, in the absence of evidence that he is a flight risk or a danger to the community.").

Courts often cite evidence that the government had been aware of the noncitizen's continued presence in the U.S. and yet had taken no action to detain the noncitizen for months or years after the visa expired. See, e.g., Huang v. Blanche, No. 2:26-cv-02157-BAT, 2026 WL 2271901, at *1, 8, 2026 U.S. Dist. LEXIS 178076 (W.D. Wash. July 15, 2026) (finding liberty interest where the noncitizen overstayed a tourist visa and applied for asylum, but was not arrested by ICE until about 4 years later); Benipal v. Rokosky, No. 26-cv-01306-RM-CDB, 2026 WL 1355010, at *1, 10, 2026 U.S. Dist. LEXIS 108085 (D. Ariz. Apr. 24, 2026) (finding noncitizen who had overstayed his visa had a liberty interest in release where he had not been detained for years after his visa has expired, even though in that time he had been issued a deficient notice to appear, been granted permission to work in the U.S., and filed an application to register permanent residence or adjust status); Kalkan v. Chestnut, No. 26-cv-02028-DAD-EFB, 2026 WL 788112, at *1, 2026 U.S. Dist. LEXIS 59347 (E.D. Cal. Mar. 20, 2026)

("[T]he petitioner entered the United States on a nonimmigrant visa and subsequently applied for asylum such that immigration officials were aware of the petitioner's presence, initially approved of that presence, and when the status expired, did not promptly detain the petitioner based on that expiration of status."); Kharitonova v. Albarran, No. 26-cv-01362-JSC, 2026 WL 531441, at *2, 2026 U.S. Dist. LEXIS 39213 (N.D. Cal. Feb. 25, 2026) ("Petitioner has a vested liberty interest in remaining free from detention as she has lived for the last 13 years. … The government's decision not to detain Petitioner 'when it processed her asylum application, took her biometrics, referred her asylum case to EOIR, and advised her to appear for multiple hearings over a period of years,' likewise gave rise to 'a liberty interest on Petitioner's part that she would remain free unless she violated her conditions of release.' … The government's insistence Petitioner lacks a liberty interest because it never before sought to detain her is specious. … Although the government did not detain and then release her, it made a decision *not* to detain her in the first place; Petitioner thus has the same liberty interest in her continued freedom as an individual initially detained.").[1]

These cases are materially indistinguishable from Petitioner's. She entered the U.S. in 2021 and timely applied for asylum in 2022. Immigration authorities have been aware of her presence in the U.S. since then, authorizing her to work in the U.S. and scheduling various appointments related to her asylum application. They made no attempts to detain her during the past five years. During that time, she developed a significant liberty interest in remaining free from detention to live her life in the U.S.

---

[1] But see Li v. Larose, No. 26-cv-1614-JLS-MMP, 2026 WL 948362, at *1-2, 2026 U.S. Dist. LEXIS 76610 (S.D. Cal. Apr. 8, 2026) (distinguishing noncitizen who overstayed visa from noncitizen previously granted parole); Jesus v. Santacruz, No. 26-cv-02181-AH-BFM, 2026 WL 1947628, at *1, 2026 U.S. Dist. LEXIS 148620 (C.D. Cal. July 2, 2026) (same).

b. Risk of erroneous deprivation and value of additional safeguards.

"[T]he risk of erroneous deprivation of liberty is high absent the procedural safeguard of a pre-deprivation hearing before a neutral decisionmaker to determine whether Petitioner's detention bears a reasonable relation to the authorized statutory purposes of civil immigration detention: to ensure appearance at future immigration proceedings or to prevent danger to the community." Perez Bueno, 2026 WL 309934, at *4, 2026 U.S. Dist. LEXIS 24644, at *9 (citing Zadvydas, 533 U.S. at 693-94).

The facts of the present case illustrate the value of such a proceeding. ICE records indicate that ICE decided to detain Petitioner based on unspecified "criminal history," but Petitioner's husband declares that she has no criminal history. (See Answer Ex. A / Dkt. 7-1 at 2-3 (Form I-213); Pet. Ex. K / Dkt. 1-2 at 24-25, ¶ 3 (husband's declaration).) Respondents' Answer makes no attempt to explain why Petitioner was detained. A pre-deprivation hearing would require the government to produce its evidence of changed circumstances and give Petitioner an opportunity to challenge that evidence. This is a significant procedural safeguard.

c. Countervailing government interest.

As many other courts have recognized, there is no meaningful countervailing government interest that supports detaining noncitizens like Petitioner without a pre-detention hearing. Ramos-Maldonado, 2026 WL 790788, at *4, 2026 U.S. Dist. LEXIS 57088, at *11 (collecting cases); Gudavasov v. Marin, No. No. 26-cv-00541-AH-MBK, 2026 WL 712827, at *2, 2026 U.S. Dist. LEXIS 49484, at *6 (C.D. Cal. Mar. 9, 2026) (same). Additionally, the burden of a pre-detention hearing is low. In immigration court, custody hearings are routine and impose a minimal cost. In this Court's experience, Respondents are routinely able to comply with orders requiring that such a hearing be held within seven days.

Respondents have presented no evidence to the contrary.

Accordingly, all three Mathews factors weigh in favor of providing Petitioner with a pre-deprivation hearing prior to any detention.

d. Appropriate remedy is release, not a post-deprivation hearing.

Releasing Petitioner is narrowly tailored to the specific wrong, because it restores the status quo that was in effect before Respondents violated Petitioner's due process rights. Moreover, allowing the government to "cure" such a violation by providing a post-detention hearing would effectively render any holding that a pre-detention hearing is required meaningless; the government could always wait until a habeas petition is filed and then offer to hold a hearing. Many courts have found that a post-detention bond hearing is insufficient in this context. See Gudavasov v. Marin, No. 26-cv-00541-AH-MBK, 2026 WL 712827, at *3, 2026 U.S. Dist. LEXIS 49484 (C.D. Cal. Mar. 9, 2026) (collecting cases finding that release, rather than a post-detention bond hearing, is the appropriate remedy); Sachin v. Warden, No. 26-cv-00707-MWC-ADS, 2026 U.S. Dist. LEXIS 36819, at *9-11 (C.D. Cal. Feb. 21, 2026) (granting TRO ordering Petitioner's release, instead of a post-deprivation bond hearing, finding "Respondents … fail to recognize that a bond hearing constitutes post-deprivation relief, which has no bearing on whether Respondents provided the requisite pre-deprivation relief.").

In fact, courts have most frequently found that this type of due process violation warrants *both* immediate release from custody *and* an injunction preventing further violations of Petitioner's due process rights. See, e.g., Medrano-Rocha v. Santacruz, 817 F. Supp. 3d 871, 882-83 (C.D. Cal. Jan. 23, 2026); Nieves v. Mullin, No. 5:26-cv-01471-DOC-DSR, 2026 WL 931143, at *4, 2026 U.S. Dist. LEXIS 77391, at *11 (C.D. Cal. Apr. 1, 2026); Fernandez v. Semaia, No. 25-cv-03412-SPG-MBK, 2026 WL 136229, at *7, 2026 U.S. Dist. LEXIS 10909, at *25 (C.D. Cal. Jan. 13, 2026).

Based on the weight of this persuasive authority, the Court will enter both types of relief here.

### C. The Court Will Ground 3, Petitioner's Substantive Due Process Claim, as Moot.

Because Ground 3 seeks the same relief as Ground 2—release from custody—the Court does not need to reach Ground 2. Accordingly, this claim will be dismissed as moot.

## V. CONCLUSION

IT IS THEREFORE ORDERED that:

1. Grounds 1 and 2 of the Petition are **granted**, and Ground 3 is **dismissed** as moot.
2. Respondents shall **immediately release** Hui Tang (A# 245-883-470) from custody.
3. If Respondents have not released Petitioner **within three (3) days** of the date of this order, Petitioner may file a request for an order to show cause re contempt.
4. Respondents shall not re-detain Petitioner without providing Petitioner a pre-detention hearing before a neutral decisionmaker where Respondents bear the burden of demonstrating by clear and convincing evidence that (a) Petitioner is a flight risk or a danger such that Petitioner's physical custody is required, or (b) on account of changed circumstances, there is a significant likelihood that Petitioner may be removed in the reasonably foreseeable future.[2]

//

[2] To the extent the Petition seeks attorney's fees and costs under the Equal Access to Justice Act ("EAJA"), Petitioner's counsel would need to file a post-judgment motion that complies with 28 U.S.C. § 2412(d)(1)(B).

5. Petitioner is not subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A).

DATED: September 10, 2026

KAREN E. SCOTT
UNITED STATES MAGISTRATE JUDGE